## CITIZENS' HORSE RAILWAY COMPANY
## v.
## CITY OF BELLEVILLE.

*Horse Railways—Use of Streets—Ordinances—Repeal of—For Non-Conformity with Conditions—Franchise — Forfeiture of—Quo Warranto—Chap. 112, Ill. Stats,*

1. In the absence of constitutional limitations the legislature of a given State has the power to authorize, at pleasure, the use of streets for railroad purposes.

2. In view of statutes named, this court holds that the city in question had the legal right and authority to impose such terms and conditions upon the street railway company referred to as it deemed best for the interest of the public, and that although a given court has the power to determine whether such terms and conditions and the mode of their enforcement contravene established principles of law, subject to which rule the exercise of all subordinate authority exists, beyond that, the court can not go.

3. The words " due process of law " as set forth in the principle providing that no person shall otherwise be deprived of his property, have reference to judicial proceedings according to the course and usage of the common law.

4. The right and privilege to construct and operate a horse railroad in the streets of a city for the purpose of carrying passengers for hire is property, if such road is constructed and completed in accordance with the terms imposed.

5. The power exists in a municipality to impose terms upon such corporation as to the time and character of the road to be constructed, upon the fulfillment of which depend the maturing of the grant, and while

such conditions are being fulfilled within the time prescribed, if there is a limit the grant remains inchoate,and they are termed conditions precedent; while those terms imposed that affect the manner of operating the road and its state of repair after its proper construction, are conditions subsequent; in which case such a grant becomes vested property with all the rights attached that secure tangible property. In the case presented, the conditions imposed, which it is claimed have been violated, were conditions subsequent, and the grant had vested as property and could only be divested by due process of law.

6.   While an ordinance, when accepted by a street railway company, becomes a contract subject to revocation at the will of the city—such right being reserved—while the contract remains executory, after such time, even if the ordinance is considered merely as a contract, it then becomes an executed contract ripened into a perfected grant—vested property—notwithstanding the terms imposed therein, upon which as vested property the subsequent conditions continue to operate under the law as applicable to such conditions, and it is not left to one of the parties to the original contract to enter judgment of forfeiture of the property of the other party to the contract and thereby divest him of his rights. It is a question of fact whether the cause of forfeiture exists; and the determination of that question would be for the courts and not the city to decide. There would have to be a legal investigation where both parties could be heard, and a judicial determination upon the facts so developed, such being " due process of law."

7.   The effect of the forfeiture claimed in the case presented, is to render the charter of defendant corporation and its franchise inoperative—tantamount to an ouster from the franchise, viz., the right to " operate a horse railway in the streets " of the city named, the rights and privileges granted by said city being a vital part of the franchise.

8.   A municipality does not stand in the same relation to such a charter and franchise merely because it has control of the streets, that an individual does who owns lands within the line of the right of way of an ordinarily incorporated railroad company. In the latter case the charter is complete when granted by the State and carries with it, under the law of eminent domain, the power to execute, with or without consent of such owner of land, the franchise. In the former case the municipality is related to the State as its agent, invested with constitutional rights as well as delegated power, in regard to the right to operate in the streets horse railways, without whose action, and by incorporating its consent in the charter granted by the State, the franchise is a nullity.

9.   Since the Constitution of 1870, the right to create and perfect such a franchise as is involved in the case presented, rests both in the State and the municipality, and the consent of the latter when granted is a part of the franchise; and the fact that the ordinance, when accepted by the company, created a contract between the parties does not affect this view. The charter of defendant is in a sense just as much a contract with the State as is the ordinance with the municipality. The contract feature, however, is limited to those provisions of the charter or ordi-

nance relating to the dealings between the incorporated company and the State or municipality as such, and does not extend to those provisions relating to the dealing of such incorporated company with the public.

10. The franchise of the defendant company being sought to be involved in the proceeding herein, the attempt to enforce a forfeiture should have been in a direct proceeding by *quo warranto* under Chap. 112, Ill. Stats.

11. While this court would not have jurisdiction to consider an appeal which involved a franchise, that is, where its judgment would result in sustaining or ousting a franchise, it has jurisdiction to determine whether or not proceedings instituted were such as could legally involve a franchise.

12. This court holds that a certain paper filed herein by complainant, called a petition, the same being in the nature of an affidavit in support of a motion to the court in charge through its receiver in foreclosure proceedings, to release from its control and custody the property of the defendant, in order that the former might remove the tracks, etc., of the defendant from its streets, should, in view of its contents, be stricken from the files of the case presented.

[Opinion filed March 17, 1893.]

APPEAL from the Circuit Court of St. Clair County; the Hon. A. S. WILDERMAN, Judge, presiding.

The appellant was granted the right and privilege of laying its tracks and operating its road along certain streets in the city of Belleville, under and by virtue of an ordinance passed December 31, 1885.

Section 1 granted the right and named the route.

Section 2 required the company to pay owners of abutting property damages, if any, by reason of the construction of the road.

Section 3 provided that the rights granted to the company were subject to the right of the city to use, improve and repair the streets, "and to make all necessary police regulations concerning the management and operation of said railroad."

Section 4 provided that the streets should not be obstructed longer than was necessary, and that the road must be constructed and operated within a certain time.

Section 5 required the company to keep the street in repair between the rails of its track.

Section 6 provided that all rights theretofore granted to the Belleville Railway Company should be granted and renewed to the appellant as its successor.

Section 7 regulated the passenger fare.

Section 8 provided that " upon the failure of said company to comply with any condition herein named the said council shall have the power, which it hereby expressly reserves, to repeal the ordinance and revoke the consent hereby given." It also provides that the right herein granted shall be forfeited as to such portion of the streets as are not used within two years.

Section 9. " If said company shall fail to operate the said horse railroad regularly for a period of thirty days, or fail to run a car over said road, to pass a given point, at least every fifteen minutes at regular intervals in the daytime, unless said failure is caused by accident to its property in said city, or its route therein, the rights and privileges hereby granted shall at once cease and determine, and unless said company, within sixty days thereafter, shall remove its tracks, turn-outs and switches from the streets then occupied by said railroad, and put said streets in good repair, the said tracks, turn-outs and switches shall be forfeited to said city."

Another ordinance, passed October 4, 1886, required that the company should run its cars where its track passed any railroad depot so as to make connection with passenger trains.

Another ordinance, passed July 21, 1890, required that the company should run a car east from its west terminus at half past nine and half past ten o'clock every night and from its east terminus at ten and eleven o'clock every night.

The appellant, on the 7th day of October, 1886, made and executed its trust deed to J. D. Percy and L. G. McNair on all its property, privileges, etc., to secure $25,000 of bonds issued by the company for the construction and equipment of its road, which drew six per cent interest, payable semi-

annually. No interest having been paid on the bonds, the trustees, on the 11th day of September, 1891, filed a bill in the Circuit Court of St. Clair County to foreclose said trust deed, declaring the whole debt due under the promise of the trust deed, averring the insolvency of the company, making the appellant John Thomas, who was alleged to be the sole owner of the bonds and coupons, and the city of Belleville, parties defendant — the latter on the ground that it had and was threatening to tear up and destroy the track of the company — prayed for a strict foreclosure, the appointment of a receiver, and asked for a writ of injunction to restrain the city of Belleville from executing its threats.

A temporary injunction was granted, and John Thomas was appointed receiver on the 21st of September, 1891, who took possession of and operated the road. Thomas soon resigned and Ryder was thereafter appointed, who continued to operate the road. Prior to the filing of the bill it appears that complaint was made by the city that the company was not keeping the track in repair, and therefore on the 18th of June, 1891, the president of the company was served with written notice to repair at once the track along Main, Illinois and Charles streets. At a meeting of the council on the 8th of September, 1891, it was ordered that the officers of the company be served with notice to appear at a council meeting to be held September 21st, to show cause why the ordinance granting the company the right to lay its tracks and operate its road should not be repealed. Notice was served on the company on the 10th of September. At the meeting on September 21, 1891, an ordinance was offered, repealing all ordinances relating to the rights and privileges granted to the appellant, but the consideration of the same was postponed until a meeting of the council on the 4th day of January, 1892, when it was taken up and passed, at which time, as heretofore stated, the road was in the hands of the receiver.

Notice of the passage of such ordinance was served on Thomas and Atterberg, who had bought all of Thomas' interest in the bonds and became the sole owner, and also one

Ryder, who was the receiver of the road. The repealing ordinance, after referring to and reciting those portions of the ordinances heretofore mentioned—granting rights and privileges to the company and imposing certain duties, and the power reserved of repealing the same—provides as follows: " Inasmuch, therefore, as the Citizens' Horse Railway Company did not reasonably comply with the duties and obligations imposed by sections 5 and 9 of said ordinance No. 185, nor with the duties and obligations imposed by ordinances Nos. 275, 201, 446 and 171, therefore be it ordained by the City Council of the City of Belleville, Illinois:

Section 1. That ordinances Nos. 446, 185, 171, 201 and 275, and all ordinances in relation to the Citizens' Horse Railway Company, except ordinance 287, be, and the same are hereby repealed, and all the rights and privileges by said ordinances granted are hereby revoked.

Section 2. That the city clerk be instructed to notify the said Citizens' Horse Railway Company to remove its tracks, switches and turn-outs from the streets of the city of Belleville within sixty days after the passage of this ordinance.

Section 3. That if said tracks, switches and turn-outs be not removed within sixty days after the passage of this ordinance, and such notice shall have been given as is provided in section 2 of this ordinance, that the same are hereby declared forfeited to the city of Belleville, and the street inspector be instructed to remove the same."

On the 16th of March, 1892, the city of Belleville filed its petition, averring that the company had not complied with the ordinance of the city, wherefore it had passed the repealing ordinance above noted, which had not been observed by the company, and concluded with the following prayer: " In consideration of the premises, your petitioner asks leave of the honorable court to remove the tracks, turn-outs, switches, etc., of the said Citizens' Horse Railway Company on said street railway from the streets of said city of Belleville."

This petition was filed in said foreclosure case, but as an independent proceeding, making no one a party defendant.

A motion made by the complainant in the foreclosure proceeding to strike the petition from the files was overruled by the court.

On the 31st of March, 1892, the city of Belleville filed its answer to the original bill, denying all the material allegations of the bill, except that part charging that it threatened and intended to tear up and remove the track of the company, which it averred and affirmed its right to do, under and by virtue of its ordinances.

The company and trustees answered the petition of the city of Belleville, denying the facts in it stated, and also the right of the city to repeal said ordinance and remove its tracks, or averring that its remedy, if any, was at law. The answer also averred that it was contemplated to change the motive power and put in an electric line, and repair and renew the old line; that if that was not permitted, then that the Citizens' Horse Railway Company, or those interested in it, were ready and willing to comply with every condition contained in ordinances under which said road is now being operated; that the earnings of the Citizens' Horse Railway are not sufficient to make repairs on said road, but if the court required it the Citizens' Horse Railway Company is ready and willing to give a good and sufficient bond, to be approved by the court, in such an amount as it might determine, conditioned for the faithful performance of all its conditions and obligations contained in said ordinances, and to improve, repair and keep in constant repair the said road, tracks, cars, etc.

The trustees and the railway company, after the cause was at issue, moved the court to refer the whole matter to the master to state the amount of indebtedness, and also to take evidence on the petition and to report the same to the court, which motion was overruled, whereupon the same parties moved that a jury be called to try the issue on the petition, which motion was also overruled.

The court heard the evidence on the petition and also on the issue, as to the foreclosure of the trust deed, and entered its decree.

The evidence taken on the petition covered the whole period of time substantially up to the time of the taking of the evidence.

There was no proof to show that the road had not been operated for any considerable period of time, on any part of its line, before the road was placed in the hands of a receiver by the order of the court.

There was evidence, however, from which it might fairly be found that the track of the road and the street between the rails were not kept in such condition as the ordinances required, and also that at various times cars did not pass a given point every fifteen minutes, and that the service was bad before the road was operated by the receiver. The findings of the court were, in substance, as follows:

First. That the Citizens' Horse Railway Company had for a long time failed to operate its road as required by the ordinances; the council had cited it to show cause why its privilege should not be revoked; that said repealing ordinance was passed as alleged, and that the company had failed to remove its tracks, etc.; that said trust deed was a valid lien on all the property, rights, etc., of the railway company; that the trustees were entitled to a decree of foreclosure for the entire debt, which was found to be $32,250, all of which debt is owned by George Atterberg; that the company is insolvent and the property not of the value of the debt, and that the property would be taken for the debt and the debt discharged, and that no benefit would arise from a sale being made. From which finding the court decreed, first, that the Citizens' Horse Railway Company take up and remove its tracks from the streets of the city of Belleville, within sixty days from May 2, 1892, and on failure to do so the city is authorized and empowered to remove such tracks, etc.

Second. It is decreed that the receiver pay certain expenses made by him out of funds in his hands, or that may come to his hands, which are declared a prior lien to the bonded indebtedness.

Third. That the company pay George Atterberg, the sole owner of the bonds, $32,250 within three months

from the date of the decree, and certain other small amounts to other parties, whereupon, if paid, the trustees are to reconvey the property to the company, but on default, the company to be forever barred and George Atterberg to get the title to and possession of the road from any one in possession thereof on the production of a certified copy of this decree under penalty of contempt for any one failing to comply, and the company to make him a deed of conveyance for "each and all of its property, both real and personal, powers, rights and privileges and franchises hereinbefore described as belonging to said company."

The trustees and the Citizens' Horse Railway Company separately prayed an appeal as to the decree in the petition of the city of Belleville and assign the following errors:

## Assignment of Errors.

First. The Circuit Court erred in deciding that the city could, before any judicial examination or adjudication that the railway company had violated any of the rights, powers, privileges and franchises granted it by the ordinances of said city to operate its railway — pass an ordinance revoking such rights, powers, privileges and franchises, and forfeiting the property of said railway company to said city.

Second. The Circuit Court erred in decreeing a forfeiture against the railway company in this proceeding, and in not striking the petition of the city from the files.

Third. The Circuit Court erred in finding and decreeing a forfeiture against the Citizens' Horse Railway Company on the evidence in the record.

Fourth. The Circuit Court erred in deciding that there was any evidence to authorize a forfeiture under the grounds specifically declared as authorizing a forfeiture by ordinance No. 185.

Fifth. The Circuit Court erred in improperly admitting all the evidence as to the condition of the roadbed and tracks after September 22, 1891, the date when the receiver took possession of the railway.

Sixth. The Circuit Court erred in denying the motion to impanel a jury to hear and determine all the questions of

fact raised on the petition filed by the city, and in refusing to refer said petition, as well as the original suit, to the master in chancery, to take and report all evidence offered by either party to the court before final hearing.

Seventh. The Circuit Court erred in decreeing a forfeiture without the railway company or the owner of the mortgage bonds being made parties to the petition filed by the city.

Eighth. The Circuit Court erred in holding that the city attorney had any power or authority from the city council to file the petition on which a forfeiture was declared.

Messrs. HAMILL & BORDERS, for appellant.

A forfeiture is never favored or implied, consequently any pleading setting forth grounds for forfeiture must be specific, and the allegations thereof must be proved conclusively. Waite on Insolvent Corporations, Sec. 124.

While this is not an action intended to destroy the corporation proper, the franchises granted by the State, the legal entity, the artificial being, yet it is completely analogous in its character to such action; the effect is the same. It seeks a forfeiture of rights, powers, privileges and franchises granted by the city to the railway company and a forfeiture of its property. Hence, it rests upon the same legal principles as *quo warranto* or an information in the nature of *quo warranto*, and it will require the same quality and amount of evidence to sustain it. The city council, in attempting to pass the ordinance repealing the rights and franchises of the railway company and forfeiting its property before any judicial examination or adjudication that the ordinance had been violated by the company, arbitrarily arrogated to itself, a legislative body, the functions and powers of the judiciary, thereby violating the provisions of the constitution of both the State of Illinois and the United States. Art. 3, and Sec. 2 of Art. 2, Constitution of Illinois; Sec. 1, Art. 14, of Amendments to the Constitution of U. S.

Dillon on Municipal Corporations, Vol. 1, Sec. 345 (3d Ed.), says: "To warrant the exercise of such an extraordinary authority by a local and limited jurisdiction, the rule is rea-

sonably adopted that such authority must be expressly con-
ferred by the legislature. And even if the power to de-
clare a forfeiture is conferred, still no person can by ordinance
be deprived of his property by forfeiture without notice or
without legal investigation or adjudication; an ordinance
in violation of this principle is void as contrary to the genius
of our laws and institutions." Hart v. Mayor, etc., of
Albany, 9 Wendell, 571; Cotter v. Doty, 5 Ohio, 398; Rose-
baugh v. Saffin, 10 Ohio, 32.

Chancellor Kent lays it down that it is a well established
principle of law that a corporation can not be dissolved by
reason of misuser or non-user of its franchises until a default
has been judicially determined. 2 Kent's Commentaries,
305, 312; Angell & Ames on Cor., 835; Cooley's Const. Lim.
(5th Ed.), 337; Dartmouth College v. Woodward, 4 Wheat.
518; New Jersey v. Wilson, 7 Cranch. 164; Planters' Bank
v. Sharp, 6 How. 301; Binghamton Bridge Case, 3 Wall.
5; Enfield Toll Bridge v. Connecticut River Co., 7 Conn.
53; Grammar School v. Burt, 11 Vt. 632; State v. Hey-
ward, 3 Rich. (S. Car.) 389; People v. Manhattan Co., 9 Wend.
351; Maryland University v. Williams, 9 Gill & John.
(Md.) 402; Commonwealth v. Cullen, 13 Pa. St. 132; Bridge
Co. v. Hoboken Co., 13 N. J. Eq. 81; State v. Commercial
Bank, 7 Ohio, 125; Louisville v. University of Louisville,
15 B. Mon. (Ky.) 642; Bruffett v. G. W. R. Co., 25 Ill. 310.

The powers of the city are wholly legislative in their
character and not judicial. The power to determine
whether the railway company had violated any of the terms
or conditions of the ordinances under which it operated its
road is purely judicial, and the city had no authority under
the law to exercise judicial power. City of Galesburg v.
Hawkinson, 75 Ill. 153; Buffett v. Gt. W. Ry. Co., 25 Ill.
303; Detroit v. Detroit and Howell Plank Road Co., 43
Mich. 140.

In Flint & Fentonville Plank Road Co. v. Woodhull, 25
Mich. 112, Judge Cooley, in delivering the opinion of the
court on this subject, said: "The determination whether
a corporation has violated its charter is judicial in its

nature. It requires the actions of those tribunals which must hear before they condemn, and must proceed upon inquiry. If it were properly legislative, it may be that the legislature must be presumed to have given a hearing; but the fact, as we have seen, in this case is otherwise, and the cases in which presumptions are to be indulged against the facts ought not to be multiplied. It is sufficient to say that, in our opinion, the case is one in which the party is entitled to a trial of right in fact, and can not be put off with one which rests exclusively in a presumption of law, indulged against the fact. The violation of the charter can not be legally made to appear, except on a trial in a tribunal whose course of proceeding is devised for the determination of questions of this nature."

Ordinances of municipal corporations may impose penalties on parties guilty of violation thereof, but they can not impose forfeiture of property or rights without express legislative authority. State v. Ferguson, 33 N. H. 324; Phillips v. Allen, 41 Penn. St. 481.

The forfeiture of franchises does not include the forfeiture of property. Property rights can not be confiscated by the State or any of its municipalities, or prevented from devolving according to the ordinary rules of equity and the common law. Morawetz on Private Corporations (2d Ed.) Sec. 1033; Bacon v. Robertson, 18 Howard, 486; Commercial Bank of Natchez v. Chambers, 8 S. & M. 52; Rowland v. Meader Furniture Co., 38 Ohio St. 270.

Even where the right is expressly reserved in the charter or contract to forfeit the franchises of a corporation, still no forfeiture can be declared by the legislature until a legal examination and adjudication is first made by the court. And if the legislature itself does not possess this right, the consent of this corporation can not confer the right. Regt. Univ. of Maryland v. Williams, 9 Gill & John. (Md.) 410; C. & O. v. Railroad Co., 4 Gill & John. (Md.) 144; Flint & P. M. R. R. Co. v. Woodhull, 25 Mich. 99; Am. Law Register (new series) Vol. 5, p. 584.

In Pacific R. R. Co. v. Leavenworth, 1 Dillon's W. S. C.

R. 393, relied upon by appellee, the injunction at first denied was afterward granted (pp. 401, 402).

In Atty. Gen. v. Utica Ins. Co., 2 Johns. Ch. 371, 389, Chancellor Kent, in discussing the powers of courts of equity upon this subject, said: "When the question is whether a corporation has forfeited its charter, or usurped a franchise, or has broken a penal law, this court is not the proper tribunal to sustain the prosecution or inflict the punishment." Atty. Gen. v. Bank of Niagara, Hopk. 354, 360; Verplanck v. Mercantile Ins. Co., 1 Edw. Ch. 88; People v. Albany, etc., R. R. Co., 24 N. Y. 261; Atty. Gen. v. Bank of Michigan, Harring. Ch. 321; Atty. Gen. v. Tudor Ice Co., 104 Mass. 244; Folger v. Columbian Ins. Co., 99 Mass. 274; Slee v. Bloom, 5 Johns. Ch. 377; Doyle v. Peerless Petroleum Co., 44 Barb. 239; Kincaid v. Dwinelle, 59 N. Y. 548; Society for Establishing Manufactures v. Morris Canal, etc., Co., 1 N. J. Eq. 157; Doremus v. Dutch Reformed Church, 3 N. J. Eq. 348; Prest. v. Trenton City Bridge Co., 13 N. J. Eq. 46.

The same view has been taken in England in Atty. Gen. v. Great Eastern Ry. Co., L. R., 11 Ch. D. 449, 503.

A court of equity will rarely, if ever, enforce a forfeiture. Morris v. Tillson et al., 81 Ill. 607.

A forfeiture can never be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than a direct proceeding for that purpose. Waite on Insolvent Corporations, Sec. 403; Laflin & Rana Powder Co. v. Sinsheimer, 46 Md. 315; Briggs v. Cape Cod Ship Canal Co., 137 Mass. 74; Wallamet Falls Canal Co. v. Kittridge, 5 Sawy. 44.

The city only by virtue of the authority conferred upon it by the State had the power to grant the franchises to the company to construct and operate its railway, and as the rights which the city is attempting to revoke came from the State through the city, the proceedings to revoke and forfeit the franchises must be the same as if the State itself was instituting proceedings to forfeit the charter. The effect of the decree rendered on the petition of the city is to destroy the corporation, but the law is, that only the power which

creates can destroy. The government having created the corporation for certain specified purposes, is entitled to a voice in its destruction. If the franchise granted by the State, or by the city through the State, has been abused or violated, that is a public wrong which the people must resent. Hence the origin of the rule that the government or people are the proper parties to institute forfeiture proceedings. And a court of law, rather than a court of equity, is the forum to determine a forfeiture. Waite on Insolvent Corporations, Sec. 400; Whitney v. Wyman, 101 U. S. 392; National Bank v. Mathews, 98 U. S. 628; State v. P. & T. Turnpike Co., 21 N. J. Law, 9; Commonwealth v. Allegheny Bridge Co., 20 Penn. St. 185; Farnham v. D. & H. Canal Co., 61 Penn. St. 265; State v. Moore, 19 Ala. 514; Rice v. National Bank of Commerce, 126 Mass. 300; Merrick v. Van Santvoord, 34 N. Y. 208; People v. Northern R. R. Co., 42 N. Y. 308; Nat. Docks R. R. Co. v. Central R. R. Co., 32 N. J. (Eq.) 755; People v. Jackson & Michigan R. R. Co., 9 Mich. 285; People v. Albany & Vermont R. R. Co., 24 N. Y. 279.

The petition was filed in order to enable the officers of the city to remove the tracks from the streets and at the same time not to make them liable to be arrested and fined for contempt of court in interfering with property in the custody of the court. That was its sole object and that its only prayer; and the relief granted can not be broader or different than that prayed for. A party in equity can not recover more than he has prayed for, or in a case different from that made by his pleading. Ellis v. Sisson et al., 96 Ill. 105; Dinwiddie v. Bell et al., 95 Ill. 360; Morris v. Tillson et al., 81 Ill. 607.

This petition was not framed for, nor intended to be, a cross-bill; it has none of the necessary elements of a cross-bill; but even if it had been intended for a cross-bill, and framed as such, no relief could be granted upon it, for it is well settled that a cross-bill must be confined to the subject-matter of the original bill. A subject-matter of litigation foreign to the subject-matter of the original bill can not be admitted into a cross-bill. The subject-matter of a cross-

bill must grow out of and be connected with the subject-matter of the original bill. Hurd v. Case, 32 Ill. 45; Thompson v. Shoemaker, 68 Ill. 256; Lund v. Skanes Enskelda Bank, 96 Ill. 181.

Those who are made defendants to it and who are not in court must be brought in in the same manner as upon an original bill, and required to answer. Indeed, it is in the nature of a separate and distinctive suit. Ballance v. Underhill, 3 Scammon, 453.

Messrs. AUGUST BARTHEL, City Attorney, JAMES A. FARMER and TURNER & HOLDER, for appellee.

The authority given by the city to the appellant was a license, and became by the acceptance of the company a contract, the same as a contract made between individuals. subject to the same rules of law, enforceable, revokable, and to be annulled in the same manner as if between two individuals. C. C. Ry. Co. v. The People ex rel., 73 Ill. 541; City of Quincy v. Bull et al., 106 Ill. 337; Chicago Mun. G. L. & T. Co. v. Town of Lake, 130 Ill. 42; Pacific R. R. Co. v. Leavenworth, 1 Dill. (U. S. C. C.) 392.

The franchise was derived from the State — that is, the right and power — but by reason of a limitation in favor of municipal corporations, the right to exercise that power depended upon the consent of the city, which was given by ordinance and accepted by the company, with all the burdens and liabilities imposed by that ordinance, and subject in all respects to the terms of that ordinance. This made the ordinance a contract, and according to the provisions of that contract the parties must be governed.

"If authority is given to construct a railway in the streets of a city or town, provided the company first obtains the consent of such municipal corporation, such corporation may impose reasonable conditions upon which the road shall be built—as, that it shall pay all damages which shall accrue to property owners, or any condition which is deemed essential for the protection of the interests of the public, *or the safety or convenience of travelers upon*

*the streets or highways.*"   Wood's Railway Law, Vol. 2, Sec. 273; St. L., Van. & Terre Haute R. R. Co. v. Capps, 72 Ill. 188; Pacific R. R. Co. v. Leavenworth, 1 Dill. (U. S. C. C.) 329.

The power conferred upon a city to give or withhold its consent to the construction of a railroad within its limits, is not limited to saying yes or no.   In giving such consent, the city may attach conditions.   Union Depot R. R. Co. v. Southern R. R. Co., Vol. 4 Am. Railroad and Corporation Cases, 622; Joy v. St. Louis, 138 U. S. 1; Sioux City Street Ry. Co. v. Sioux City, 138 U. S. 98; Chicago, M. G. L. & F. Co. v. Town of Lake, 130 Ill. 42.

And having attached a condition to an ordinance grant. ing a privilege or license to a corporation to construct a street railway in its street, or to lay water or gas pipes, and the corporation or individual seeking such privilege having accepted the provisions of such ordinance, takes the privilege granted, subject to all the conditions in such ordinance contained.   And the city authorities may, by force, assert the rights of the city reserved by such conditions.   Chicago M. G. S. & F. Co. v. Town of Lake, 130 Ill. 42; Havelman v. The Kansas City Horse Railroad Co., 79 Mo. 641; Knight v. K. C., St. J. & C. B. R. R. Co., 70 Mo. 231; Brooklyn Central R. R. Co. v. Brooklyn City R. R. Co., 32 Barb. 363.

Counsel for appellant, in all the phases of their argument, insist that there is here a forfeiture of a franchise, and could only be done by an adjudication instituted directly for that purpose.   Now we contend that even though the legislature itself had granted this right, it would be competent to repeal the act, providing the original act had reserved the right to do so.   This power to repeal is reserved either absolutely or conditionally.   If it is reserved conditionally, to be exercised only in case a certain event shall happen, the legislature may enact the repeal whenever the event happens.   4 Am. & English Encyc. of Law, 300; Creass v. Babcock, 23 Pick. 234; Erie & North East R. R. Co. v. Casey, 26 Pa. St. 287; Commonwealth v. Pittsburg, etc., R. R. Co., 58 Pa. State, 46; Miner's Bank v. U. S. Bank, 1 Greene, 561; McLaren v. Pennington, 1 Paige, 102; Fer-

guson v. Miner's, etc., Bank, 35 Tenn. 609; Read v. Frank-
fort Bank, 23 Me. 318; Commissioners of Inland Fisheries
v. Holyoke Water Power Co., 104 Mass. 146; Myrick v.
Brawley, 33 Minn. 377; Oakland R. R. Co. v. Oakland B.
& F. V. R. R. Co., 45 Cal. 365. (Reported in 13 Am.
Reports, page 181.)

In the latter case the court says that if a franchise is
granted by the legislature to construct a street railroad
within a certain time, with a condition that if the provisions
of the act are not complied with, the franchise shall be for-
feited, a failure to lay the track within the time limited,
works a forfeiture of the right to lay the tracks without a
judgment at the suit of the State declaring a forfeiture,
and the legislature may confer the franchise upon any
other company or person.

In Miner's Bank v. U. S. Bank, the Iowa Supreme Court
went still further and held that not only the fact on which
the right of repeal depended might be noticed by the legis-
lature without the assistance of the judiciary, but that its
truth could never afterward be questioned by any court. It
is urged by counsel for appellant that the repealing of the
ordinance works a great hardship upon appellant; that it
would be a destruction of the property of the appellant to
permit the repealing ordinance to stand. This is a plausible
argument; but who shall suffer this loss and inconvenience—
the appellant or appellee? Is not appellant responsible for
this condition of affairs? Did not appellant see and under-
stand these sections and the rights the city reserved when
it accepted the ordinance? If appellant suffers from the
exercise of the powers and rights reserved by appellee,
surely it can censure no one but itself for accepting the
ordinance containing such reservations.

MR. JUSTICE SAMPLE. The primary questions presented
in the foregoing statement of facts are as follows:

First. Can a municipal corporation impose reasonable
conditions on a street railway company in its ordinance
granting the right to use its streets for railway purposes,

which relate to the operation of such road after its construction, and reserve the legal right, on its own adjudication of a failure to comply with such conditions, to repeal such ordinance and thereby divest the company of its property in such grant?

Second. If it can not do so, what proceedings must it institute to test the question of the violation of such conditions, and did the city of Belleville pursue the course prescribed by law.

There are other incidental questions that arise: first, as to the sufficiency of the petition; second, as to the parties that should be made defendant; third, as to whether the cause should have been referred to the master; fourth, as to the right of trial by jury; fifth, as to the right of the city attorney to file the petition without a showing of authority from the city council.

In some of its features, at least, the case presents some new questions. The Citizens' Horse Railway Company was chartered by the sovereign power of the State. Its charter, as an instrument, evidenced its public grant of authority to do a certain thing, viz.: In the language of the statement filed with the Secretary of State, upon which the certificate of incorporation was issued, " to construct, maintain and operate a horse railroad in the streets of the city of Belleville, in St. Clair County, Illinois." The right to do that thing was what is called its franchise.

Apparently the grant was in and of itself full and complete, yet it could not be enforced as against the will, or exercised without the consent of the municipal corporation of Belleville, which had the control of the streets.

The power of the legislature was limited by Sec. 4, Art. 11, of the Constitution of 1870, which provided that "no law shall be passed by the General Assembly, granting the right to construct and operate a street railroad within any city, without requiring the consent of the local authorities having the control of the streets proposed to be occupied by such street railroad." Hence, in contemplation of law, the charter was granted subject to that condition. In the

absence of such limitations, "the legislature has the undoubted power to authorize, at pleasure, the use of streets for railroad purposes." Dillon on Municipal Corporations, Sec. 570.

It is doubtful if the provision of the constitution, however, which operated as a limitation upon the power of the legislature itself, operated to vest the power in the municipality to grant such consent. Hence, the legislature, by Par. 24 of Sec. 1, Art. 5, of the General Incorporation Act, relating to cities, in force July 1, 1872, vested municipalities with that power as follows:

"To permit, regulate, or prohibit the locating, constructing or laying a track of any horse railroad, in any street, alley or public place." However, such power so granted by the legislature, gave at least no express authority to impose conditions. So by Sec. 3, Chap. 66, of "An Act in regard to Horse Railroads," in force July 1, 1874, it was provided that "the consent of such municipality may be granted * * * upon such terms and conditions, not inconsistent with the provisions of this act, as such corporate authorities * * * shall deem for the best interest of the public." By Sec. 4 of said act it is provided that "every grant to any such company of a right to use any street * * * shall be subject to the right of the proper authorities to control the use, improvement and repair of such street * * * to the same extent as if no such grant had been made, and to make all necessary police regulations concerning the management and operation of such railroad, whether such right is reserved in the grant or not."

It is clear, therefore, that under express statutory law, the city of Belleville had the legal right and authority to impose such terms and conditions as it deemed best for the interests of the public.

While the court may have the power to determine whether such terms or conditions, and the mode of their enforcement, contravene established principles of law, subject to which rule the exercise of all subordinate authority exists, yet beyond that the court can not go. This brings

us to the question first presented, whether the city of Belleville had the lawful right to adjudicate and determine for itself, whether or not the conditions imposed on the company had been violated, and having determined that they had been violated, repeal the ordinance granting the rights and privileges under which the road was constructed and operated.

It must be held that the power granted to the city to impose terms and conditions, presupposed that it would be exercised in accordance with and subject to those fundamental principles of right and law which protect property, one of which is, that " no person shall be deprived of property without due process of law."

" Due process of law " has reference to judicial proceedings, according to the course and usage of the common law. Campbell v. Campbell, 68 Ill. 462.

That the right and privilege to construct and operate a horse railroad in the streets of a city, for the purpose of carrying passengers for hire, is property, is unquestioned and unquestionable, if the road is constructed and completed in accordance with the terms imposed.

Such privilege constitutes the principal value of such property. The test as to whether such privileges become vested property seems to depend upon the kind of terms imposed — that is, whether they are of that character, as affecting such rights and privileges, as create conditions precedent or conditions subsequent. If the former, then it is said such rights and privileges do not vest as property; if the latter, they do vest. Washburn on Real Property, Par. 11, p. 449. Without indulging in the refinements of the law as to estates on conditions precedent and conditions subsequent, practically and plainly the law seems to be that the power exists to impose terms as to the time and character of the road to be constructed, upon the fulfillment of which depends the maturing of the grant, and while such conditions are being fulfilled within the time prescribed, if there is a limit, the grant remains inchoate. These are termed conditions precedent, while those terms imposed that affect the man-

ner of operating the road and its state of repair after its proper construction, are said to be conditions subsequent, in which case such a grant becomes vested property, with all the rights attached that secure tangible property.

In this case the conditions imposed, which it is claimed have been violated, were conditions subsequent — that is, conditions affecting the operation of the road after its proper construction, and the keeping in proper repair the streets and tracks — so that the grant had vested as property and could only be divested by due process of law.

It is said, however, that the ordinance in question, when accepted by the railway company, became a contract subject to revocation at the will of the city, that right having been reserved. This seems plausible, and is the law, while the contract remained executory — that is, until the road was constructed in accordance with the terms prescribed. After that time, even if the ordinance is considered merely as a contract, it then becomes an executed contract ripened into a perfected grant — vested property — notwithstanding the terms imposed therein, upon which, as vested property, the subsequent conditions continued to operate under the law as applicable to such conditions. Under that law, it is not left to one of the parties to the original contract to enter judgment of forfeiture of the property of the other party to the contract, and thereby divest him of his rights. It is a question of fact whether the cause of forfeiture exists. The determination of that question would be for the courts and not the city of Belleville.

There would have to be a legal investigation where both parties could be heard, and a judicial determination upon the facts so developed. That would be due process of law. Booth's Street Railway Law, Sec. 49, p. 66, and notes. It is said, however, that there was such hearing and judicial determination in this case. This brings us to a consideration of the remedy that should be pursued.

The forfeiture here claimed is of all the rights and privileges granted by the ordinances to the Citizens' Horse Railway Company the effect of which would be, not to annul

the charter and dissolve the corporation, but to render the charter and the franchise inoperative. It would be tantamount to an ouster from the franchise; that is, the right to do that thing evidenced by the charter, viz., "operate a horse railway in the streets of the city of Belleville." It would seem, in a sense, that the rights and privileges granted by the city of Belleville are a part of the franchise, and a vital part.

A municipality does not stand in the same relation to such a charter and franchise merely because it has control of the streets, that an individual does who owns lands within the line of the right of way of an ordinarily incorporated railroad company. In the latter case the charter is complete when granted by the State, and carries with it under the law of eminent domain the power to execute, with or without consent of such owner of land, the franchise.

In the former case, the municipality is related to the State as its agent, invested with constitutional rights as well as delegated power in regard to the right to operate in its streets horse railways, without whose action, and by incorporating its consent in the charter granted by the State, the franchise is a nullity. How can it, then, be legally and logically said that that consent which is absolutely necessary to the vitality and execution of the franchise is no part of the franchise itself? Since the constitution of 1870, it is believed that the right to create and perfect such a franchise as is involved in this case rests both in the State and the municipality, and that the consent of the municipality, when granted, is a part of the franchise.

The fact that the ordinance when accepted by the company created a contract between the parties does not affect this view. The charter of the appellant is in a sense just as much a contract with the State, as is the ordinance with the municipality. The contract feature, however, is limited to those provisions of the charter or ordinance relating to the dealings between the incorporated company and the State or municipality as such, and does not extend to those provisions relating to the dealing of such incorpo-

rated company with the public.   If these views are correct, then in a limited, if not in the full sense of the term, the franchise of the appellant was attempted to be involved, in which case it follows that the proceedings to declare and enforce a forfeiture should have been in a direct proceeding by *quo warranto* under Chapter 112 of the Statutes.

It is held in the case of The Attorney General v. The C. & E. R. R. Co., 112 Ill. 520, that a cause of forfeiture of a franchise can not be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation.

Such a proceeding does not involve fraud, accident, mistake or irreparable damages, and where the remedy is complete and adequate at law, equity will not take jurisdiction. Keigwin v. Drainage Com'r, 115 Ill. 347.

It is believed that the following authorities sustain our view that a franchise is involved, and that the remedy is by *quo warranto :* State ex rel. Att'y Gen'l v. Madison Street Ry. Co., 72 Wis. 612, cited in Secs. 49 and 52, Booth on Street Railway Law.

In view of what has been said it is not necessary to dwell upon the other points made in this appeal.   It may not be inappropriate, however, to add that the paper filed by the City of Belleville, called in these proceedings a petition, is not and does not purport to be an intervening petition or other paper legally related to the foreclosure proceedings. No one is made or asked to be made a party defendant or asked to answer what is set up.   It is more in the nature of an affidavit in support of a motion to the court to release from its control and custody the property of the appellant, in order, to quote the concluding part of the affidavit, that the city may "remove the tracks, turn-outs, switches, etc., of said Citizens' Horse Railway Company, or said street railway, from the streets of said city of Belleville."   The attitude of appellee as disclosed by its affidavit or petition is, without speaking disrespectfully, that of party, judge and sheriff, all in the same case.   It, although a party, had tried

the case and passed judgment, from which there was to be no appeal, involving property of the value of about $30,000, of which the court, by its receiver, had taken control in the foreclosure proceeding.

The city of Belleville boldly asked that the court should release control of the property without trial, so that its officers might execute its sentence of removal and forfeiture, and thus oust the Citizens' Horse Railway Company of its franchise.

This, we hold, was but an attempt to involve a franchise in this proceeding. While this court would not have jurisdiction to consider an appeal which involved a franchise— that is, where its judgment would result in sustaining or ousting a franchise, yet it is considered that it has jurisdiction to determine whether or not the proceedings instituted were such as could legally involve a franchise. For the reason stated, it is considered there was error in that part of the decree from which this appeal was prosecuted. That part of the decree is reversed, with directions to strike what is called the petition from the files of the court.