## THE CITY OF DETROIT ET AL. v. ADOLPHUS A. ELLIS, ATTORNEY GENERAL.

*Res judicata—Municipal corporations—Quo warranto.*

A suit instituted by a city against a street-railway company to enjoin it from operating its railway after a given date in certain streets in the city, on the ground that an ordinance extending to another company, to whose franchises the defendant had succeeded, the right so to operate its railway was void after said date, was removed to the federal courts, where a decision was rendered in favor of the defendant. And it is held that said decision is *res judicata* of the question in issue in said suit, on an application by the city and certain of its citizens for *mandamus* to compel the Attorney General to file an information in the nature of *quo warranto* to inquire by what right said defendant railway company maintains and uses its tracks in said streets after the date named.[1]

*Mandamus.* Argued November 26, 1894. Order to show cause denied January 22, 1895.

Relators applied for *mandamus* to compel the Attorney General to file an information in the nature of *quo warranto* to inquire by what right a certain street-railway company claims to and does exercise, in certain streets in the city of Detroit, the franchise of maintaining and using street-railway tracks in said streets. The facts are stated in the majority opinion.

*C. A. Kent* and *Benton Hanchett,* for relators.

*F. A. Baker, Russel & Campbell, Ashley Pond, Henry M. Duffield,* and *Sidney T. Miller,* for respondent.

McGRATH, C. J. This is an application for an order

---

[1] On the merits of the question sought to be raised by the application for *mandamus*, see 26 L. R. A. 667.

to show cause why the Attorney General should not file an information in the nature of a *quo warranto* to inquire by what right the Detroit Citizens' Street-Railway Company claims to exercise, and does exercise, in certain streets of the city of Detroit, the right of maintaining and using street-railway tracks in said streets.

Petitioners allege that in November, 1862, the common council of the city of Detroit passed an ordinance whereby consent was given to one Bushnell and his associates, who were about to organize as a corporation, to lay street railway tracks and to operate a street-railway system in and upon certain streets in the city of Detroit; that " afterwards, on the 9th day of May, 1863, said Bushnell and his associates organized into a corporation, which, by its articles, was to continue for 30 years, under the name of the Detroit City Railway, which entered into possession of said streets, and built and maintained street-car lines, and exercised all the usual franchises connected therewith; " that " November 14, 1879, another ordinance was made, adding other provisions to the agreement between the street-railway company and the city, and providing that the ' powers and privileges conferred and obligations imposed on the Detroit City Railway Company by the ordinance passed November 24, 1862, and the amendments thereto, are hereby extended and limited to 30 years from this date;' " that in 1891 the Detroit Citizens' Street-Railway Company was organized for a period of 30 years, and, soon after its organization, received a conveyance of all the property rights and franchises of said Detroit City Railway Company, and under such conveyance the Detroit Citizens' Street-Railway Company claims the right to operate, and is now using, all the franchises in said streets; " that the value of the franchises and rights in said streets occupied and claimed by said Citizens' Street-Railway Company is very great, and that its claims are a great

obstacle, as your petitioners are informed and believe, and therefore aver, to the making of the best terms which the city can make for the public accommodation by the establishment and maintenance of improved street-car lines on said streets, and are therefore injurious to the city and all residents; that, if the claims of said Citizens' Company are declared void, arrangements can readily be made with other street-car companies by which the car service can be greatly improved, and either the fares much reduced, or the amount paid to the city be greatly increased, or both; that the said ordinance of 1879, attempting to extend the franchises and rights of said Detroit City Railway 30 years from November 14, 1879, was void after May 9, 1893, because the life of said grantee expired at that time."

In 1892 the city of Detroit filed its bill in the circuit court for the county of Wayne, in chancery, against the Detroit City Railway, the Detroit Citizens' Street-Railway Company, and others, setting forth at length the matters which are substantially set forth in the petition herein, and praying that defendants might be enjoined from operating street railways in said streets after the 9th day of May, 1893. The said cause was afterwards removed to the circuit court of the United States for the Eastern District of Michigan, in equity, where a decree was finally entered in accordance with the prayer of the bill. *City of Detroit v. Detroit City Ry. Co.,* •60 Fed. Rep. 161. Defendants took the case to the court of appeals, where it was heard upon its merits; and in October, 1894, a decree was entered reversing the decree of the circuit court, and dismissing the bill. 64 Fed. Rep. 628, 12 C. C. A. 365.

Why must not the question here sought to be raised by *quo warranto* be regarded as *res judicata* as against the moving parties, the city of Detroit and certain of its citizens? Under its charter, the city of Detroit has the charge

and supervision of the streets of that city. It has the power to establish, open, widen, extend, straighten, alter, vacate, and abolish streets; to clean, grade, pave, repair, and improve the same; to prohibit and prevent incumbering or obstructing highways; to remove incumbrances from such streets; and to control, prescribe, and regulate the manner in which streets within the city shall be used and enjoyed. In the very act containing the grant to the street-railway company, the supervision and control, by cities and other local municipalities, over streets and highways, is recognized, and the exercise of the right granted is made dependent upon the consent of the local entity. If a street-railway company is operating its system upon the streets of the city of Detroit in the absence of a valid and binding consent granted by the city, the municipality is certainly a proper party, if not the proper party, to take proceedings to enjoin such operation, not only by virtue of its control over the streets, but also because the power to consent involves the authority to prevent. The municipality moves in such case, not as a proprietor, but in its representative capacity,—as the representative of the public,—as the proper party to complain of the unauthorized use of such streets. The only question in issue is as to the validity of the consent granted.

Counsel for the petitioners say in their brief that—

"This application is made by the municipal authorities of the city, who are the trustees of the public, for the protection of the interests of the public in the streets."

Again they say:

"In this case the municipality itself makes the complaint. It is vested with the control of the streets in the interest and for the protection and benefit of the public. It is hindered and prevented from the exercise of such control by the acts of the railway company."

The bill in the case in the United States court was filed

by the same authorities, in precisely the same capacity, and ·
to reach the same result. Can the adjudication, then, be
avoided by the simple addition of individual members of
the body comprising the beneficiaries? If so there will be
no end to the litigation. In the case of *Clark v. Wolf*, 29
Iowa, 197, cited in Wells on Res Adjudicata (section 136),
it was held as to a county—and the same principle would
apply to a city—that a judgment against it, or its legal
representatives, in a matter of general interest to all the
people thereof, as one respecting the levy and collection of
a tax, is binding, not only on the official representatives
of the county named in the proceeding as defendants, but
upon all the citizens thereof, though not made parties de-
fendant by name. This must be the true rule as to matters
of public concern, when the proper representative of the
public has moved or has been made a party to the pro-
ceeding.

If the authority to consent to the use of its streets be
regarded as a delegation of power to the municipality, and
the authority over the streets be also considered as a dele-
gation of power to the city, the municipality must be re-
garded, as is said in *Railway Co. v. City of Belleville*, 47
Ill. App. 388, as "related to the State as its agent," in
so far, at least, as to conclude the State by litigation had
in good faith respecting the subject-matter. Again, the
State has regarded the matter of consent as one of purely
local concern. A controversy arose between the city of
Detroit and the Citizens' Railway Company as to whether
the consent of the city had been given in such a manner
as to be available to the present company and binding
upon the city, and the city appealed to the courts, where
the matter has been determined. The only question liti-
gated was whether the consent given survived to the pres-
ent company. In a proceeding instituted by the munic-
ipality, a court of competent jurisdiction has determined

that matter in favor of the company, and that determination is conclusive upon all parties concerned.

The order to show cause must be denied.

LONG, GRANT, and MONTGOMERY, JJ., concurred with McGRATH, C. J.

HOOKER, J.   Without dissenting from the views expressed by my brother, I prefer to concur in the result reached in the case upon other grounds.   It is nowhere shown that this proceeding is of concern to the State.   Indeed, counsel say that all that is asked is that the Attorney General shall permit the use of his name to the relators, thus practically confirming the already obvious fact that the city of Detroit wishes to be allowed to continue a litigation in the name of another which it cannot lawfully do in its own, being foreclosed by an adverse decision from a court of competent jurisdiction in a suit instituted by itself.   It would be anomalous to grant a discretionary writ for such a purpose.