## TEXAS EMPLOYERS' INS. ASS'N v. PARR.
### No. 1173—5498.

Commission of Appeals of Texas, Section B.
June 28, 1930.

Bullington, Boone, Humphrey & King, T. R. Boone, E. T. Duff, and John Q. Humphrey, all of Wichita Falls, for plaintiff in error.

Allred & Allred and James V. Allred, all of Wichita Falls, for defendant in error.

SHORT, P. J.

This is an action brought by the defendant in error, Edward A. Parr, against the plaintiff in error, Texas Employers' Insurance Association, to recover compensation under the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309).

On May 2, 1927, while at work for the Texas Pipe Line Company, the employer, carrying insurance for its employees with the plaintiff in error, Parr, the defendant in error, fell from a scaffold sustaining an injury resulting in his total and permanent incapacity, according to the answers of the jury to certain special issues.

The defendant in error based his case upon allegations of fact, asserting total and permanent disability, resulting from the injuries received on May 2, 1927, while the plaintiff in error merely filed a general demurrer and general denial.

The testimony of the defendant in error supported the allegations in his petition, while the defense of the plaintiff in error consisted of certain medical expert testimony, introduced under the general issue, to the effect that the defendant in error, at the time he was injured, was suffering with high blood pressure and infection of or an arthritic spine, which condition affects a person's ability to labor to a certain extent, and to the further effect that this condition was possibly of long standing over a period of from three to ten years.

The court, of its own motion, submitted three material issues, as follows:

"Special Issue No. 1:

"Was the plaintiff, E. A. Parr, injured on or about the 2nd day of May, 1927, in the course of his employment with the Texas Pipe Line Company? Answer, Yes or No. Answer: Yes."

"Special Issue No. 2:

"Did the injury, if any, suffered by the plaintiff, E. A. Parr, result in his total incapacity? Answer, Yes or No. Answer: Yes."

"Special Issue No. 3:

"Was such total incapacity, if any, permanent? Answer, Yes or No. Answer: Yes."

The court, at the request of the plaintiff in error, submitted the following additional issues, which were answered as here indicated:

"Special Issue No. 12:

"Was the injury, if any, which the plaintiff, Edward Parr, received on May 2nd, 1927, the direct and proximate cause of the condition of the plaintiff, Edward Parr, at the present time?" The jury answered "Yes."

"Special Issue No. 13:

"Did the plaintiff's condition of arthritis and his high blood pressure directly and proximately cause the condition of the plaintiff, Edward Parr, at the present time?" The jury answered "No."

"Special Issue No. 14:

"If you have found that the plaintiff, Edward A. Parr's condition is a result of other causes than his injury and further found that his injury, if any, also contributed to said condition, then find what percentage of such incapacity is chargeable to the injury, if any, that said Edward Parr received on or about May 2nd, 1927. Answer giving the percent-

age, if any." The jury answered 75 per cent. due to injury.

"Special Issue No. 15:

"Is the plaintiff, Edward Parr's present condition solely caused from his condition of arthritis and his high blood pressure or other cause than his physical injuries, if any, he received on May 2nd, 1927?" The jury answered "No."

"Special Issue No. 17:

"Are the injuries, if any, which Edward Parr received on or about May 2nd, 1927, at the present time affecting Edward Parr?" The jury answered "Yes."

It was established, without dispute, that the defendant in error, on and prior to May 2, 1927, was receiving from the Texas Pipe Line Company, for his services as their employee, the sum of $31.50 per week, and that he claimed to be entitled to compensation in the sum of $18.90 per week for the injury he had received while in the course of his employment.

Upon the undisputed testimony and the answers to the special issues, the district court entered a judgment in favor of the defendant in error and against the plaintiff in error, for a sum based on 400 weeks at the rate of $18.90 per week, less 59 weeks that have been previously paid to the defendant in error, and ordered payment to be made in a lump sum, to wit, $5,402.45.

The plaintiff in error excepted to this judgment, after having filed its motion for a new trial, and after it had been overruled, upon appeal to the Court of Civil Appeals at Amarillo, the judgment of the district court was affirmed. 16 S.W.(2d) 354. The plaintiff in error, having presented its motion for a new hearing, and said motion having been overruled, it has been granted, upon due application to the Supreme Court, a writ of error.

While there are five assignments of error embraced in the application for the writ of error, the question of law involved, more or less in all of them, is presented in the fourth assignment, and the propositions presented thereunder. Two of these propositions are as follows:

"1. The plaintiff in this case sought recovery for total and permanent disability, resulting from an injury received on May 2, 1927. The cause of action thus pleaded, from the defendant interposed a general denial. It was, therefore, material, under the pleadings to show that plaintiff's condition was not due solely to the injury received on May 2, 1927, and Special Issue No. 14 was, therefore, a material one."

"2. Since, in this case, Special Issue No. 14 was a material one, under the pleadings, and submitted to the jury by the trial court, and the jury returned an answer thereto in conflict with other answers to other Special Issues, and the verdict of the jury was accepted by the court, the court could not disregard the finding and enter judgment in favor of the plaintiff. The trial court erred in rendering judgment, and the Honorable Court of Civil Appeals was without power to affirm the judgment."

It is apparent, from the fact that no assault is made upon the answers to the first three issues submitted to the jury, that these answers are amply supported by testimony. In other words, it appears that the defendant in error was injured in the course of his employment on the 2d of May, 1927; and that this injury resulted in total incapacity, which incapacity was permanent. It further appears, from the answers of the jury, apparently supported by sufficient testimony, that this injury received on May 2, 1927, was a direct cause of the condition of the defendant in error at the time of the trial, from which injury the defendant in error was then suffering, and that the defendant in error's condition of arthritis and high blood pressure did not directly cause the condition of the defendant in error, as the jury had found that condition to be, which resulted from the injuries suffered on May 2, 1927.

Notwithstanding these facts, as found by the answers of the jury to the several issues submitted, it is the contention of the plaintiff in error that the answer to special issue No. 14 is of such a contradictory character to the answers to the other issues submitted as to have precluded the trial court from rendering any judgment in the case, or at least to have precluded the trial court from rendering judgment it did. The theory upon which the plaintiff in error bases its contention is that since the testimony showed and the jury found, in answer to issue No. 14, that the defendant in error was suffering prior to May 2, 1927, from an arthritic condition, it had damaged the physical structure of the body of the defendant in error to the extent of 25 per cent.; and that this arthritic condition, resulting in this damage, was in part the cause of the total and permanent disability, from which the defendant in error suffered.

Assuming the facts to be, as stated in this contention, the plaintiff in error asserts, as a correct legal proposition, that the defendant in error, although totally and permanently disabled, as the result of the injuries inflicted in the course of his employment, yet the defendant in error could not be entitled to recover a greater sum, as compensation, than three-fourths of the sum he actually recovered. In other words, while the defendant in error was allowed compensation for 400 weeks, at most, he could not be entitled to compensation for more than 300 weeks.

The law, upon which this suit is based, has been enacted for the benefit of certain classes of employees, among which the

plaintiff in error is shown to be one. It is the duty of courts, in deciding cases under this law, to so construe its several provisions as to effectuate the purpose of the Legislature in enacting it. The amount of compensation to an injured employee is based upon the average weekly wages of such injured employee. An employee whose average weekly wage is $24 per week can recover only 60 per cent. thereof, for a specified time, while an injured employee, whose average weekly wage is $12 per week, can only recover 60 per cent. of that sum. The industry is protected by the terms of the law against liability beyond 60 per cent. of the earning capacity of the employee. It is a matter of common knowledge that an employer pays his employee in accordance with the capacity of such employee to render the services desired. It is equally a matter of common knowledge that an employer in selecting his employees, and fixing their weekly wage, does so with reference to the individual capacity of each individual employee to do the particular work, which the employer requires to be done, in order to economically and efficiently carry on his business. Where the business of an employer requires physical strength to be possessed by an employee, in order to do the work demanded, the employee, having in a high degree this physical strength, receives a larger average weekly wage than an employee who does not possess this capacity. Employees whose strength has been diminished from age or from disease do not receive for their labor, in a work requiring physical strength, as high a wage as an employee possessing such strength.

However, the insurer of the employer, in case an aged or diseased employee is injured, is not compelled to respond in compensation for injuries received by this character of an employee more than the proportional part of the wage, which the law permits to be recovered of the average weekly wage, of such aged or diseased person.

If the employment, in which the employee was engaged at the time the injury was inflicted, was the direct producing cause of such injury, the law allows compensation, notwithstanding the fact may be that, at the time the employee received the injury, he was suffering from age or disease to such an extent as had the effect to materially impair his capacity to perform for his employer as much labor as a young and healthy man could perform. If the condition of Parr, at the time he received the injury, was the result of disease, and that the injury, which he had received, was not the direct producing cause of the injury, then in such case Parr would not be entitled to recover anything, for the reason that his condition was not the result of any injury, but was the result of disease. Upon the other hand, even though Parr was diseased to such an extent as to impair his capacity to perform labor to the extent of 25 per cent., yet if, in the course of his employment, he received an injury, which totally and permanently disabled him, the fact that he was partially incapacitated from disease would not prevent him from recovering compensation for the full amount, which, under the law, he was entitled to receive without reference to the disease. An injury may be caused by an accident, although no injury would have been suffered but for the existence of disease, which was aggravated by the accident, but it is the accident, resulting in an injury, for which the law gives compensation, measured, of course, by the average weekly wage of the injured employee.

Section 7 of article 8307 requires every employer to keep a record of all injuries sustained by his employees in the course of their employment and to make certain reports of such injuries. Section 5 of article 8309 denominates these reports required of the employers as accidents. An "accident" is an undesigned, unforeseen, or unexpected occurrence of a calamitous nature, and the term "injury" or "personal injury," as used in the Workmen's Compensation Law means (article 8309, § 1), "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." In section 1, article 8309, the term "injury sustained in the course of employment," as used in this law, means any and all injuries except the four designated in this section, in which a previous existing condition caused by disease is not included. There is no defense to a claim for compensation, based on the fact that the injuries would not have been as great had the employee been in a perfectly healthy condition. A condition resulting from an existing disease prior to the infliction of the injury, for which compensation is claimed, does not mean that an employee has suffered a previous injury, such as is mentioned in section 12c, article 8306. In Gurney v. Los Angeles Soap Company, 1 Cal. Ind. Acc. Com'n (Part 2) 163, where an employee, who had an extremely high blood pressure, was performing extraordinarily heavy muscular work when some oil splashed in his eye, which became blurred and finally nearly sightless, on account of a previous diseased condition of the eye, it was held that the employer accepted the employee in the condition in which he was, and that such an injury, although in part, due to the high blood pressure, was a proper basis for a compensation claim.

In another case by the same tribunal, Rose v. City of Los Angeles, 2 Cal. Ind. Acc. Com'n. 551, where an employee, having a small cancer in the stomach of a character such as not to cause death for many years, received a heavy blow which inflamed the

cancer increasing its size to such an extent as to obstruct the ducts of the gall bladder and liver, and death followed one month after the injury, it was held that the accidental blow was the direct cause of the death, and compensation was allowed.

To the same effect and under a similar state of facts are the opinions by the same tribunal in Shields v. Miller, 2 Cal. Ind. Acc. Com'n. 957; Frohn v. Bayle, La Coste & Co. 3 Cal. Ind. Acc. Com'n. 274. In the case of Auguzzi v. Blakeslee, the Connecticut Compensation Commission held that disability caused by an aggravation of a rheumatic condition through a strain established such an injury as entitled the workman to compensation. In Brightman v. Ætna Life Insurance Co., 2 Mass. Ind. Acc. Board, 765, it was held that an acceleration of a previously existing heart disease to a mortal end, sooner than otherwise it would have come, is an injury arising out of employment, and compensable under the law of that state, which is substantially the same as the law in this state on the subject we are discussing. In Welch v. Employers' Liability Assur. Corporation, Limited, 1 Mass. Ind. Acc. Board, 173, where an employee suffering from heart disease was injured by a heavy wheel falling upon him, from which injury he died and the medical testimony was that the shock of the fall of the wheel might have caused death, it was held that the accident arose out of the employment. To the same effect by the same tribunal are the opinions in Clements v. Travelers Ins. Co., 1 Mass. Ind. Acc. Board 273; Fleming v. Massachusetts Employes Ins. Ass'n, 2 Mass. Ind. Acc. Board 411; Gacuzzi v. Employers' Liability Assur. Corporation Limited, 2 Mass. Ind. Acc. Board, 626. In Grove v. Michigan Paper Co., 184 Mich. 449, 151 N. W. 554, where an aneurism from which an employee was suffering was caused to burst by excessive strain from overwork, it was held that this was such an injury as entitled the employee to compensation. Likewise by the same tribunal in Schroetke v. Jackson-Church Co., 193 Mich. 616, 160 N. W. 383, L. R. A. 1917D, 64, where an aged night watchman had been afflicted with heart disease, and, on discovering a fire and in giving warning and attempting to extinguish it, he became exhausted and died from heart failure, it was held that his death was due to an accidental injury. In Voorhees v. Smith Schoonmaker Co., 86 N. J. Law, 500, 92 A. 280, 281, where the deceased workman was suffering from internal cancer, and where it was found that there was a rupture of the cancer while he was pushing a post through a furrowing machine, by pressing his abdomen forcibly against the end of the post, it was held that this was an accidental injury, the court in that case saying: "Even if deceased was suffering from internal cancer, it was quite within the province of the court to find that the proximate cause of death was the unusual

and forcible pressure on parts weakened by disease, which but for the unusual strain would have held out for a considerable period." To the same effect are the opinions in Jones v. Public Service Railway Co., 86 N. J. Law, 646, 92 A. 397; Winter v. Atkinson-Frizelle Co., 88 N. J. Law, 401, 96 A. 360.

In Norwich Union Indemnity Co. v. Smith (Tex. Com. App.) 12 S.W.(2d) 558, 561, where the issue was sharply drawn by the testimony, in a compensation case, as to whether the employee had died as the result of an injury received in the course of employment, or from a previously existing disease from which he was suffering, but where there was a substantial agreement that there was evidence of an external injury, the Commission of Appeals, speaking through Judge Nickels, says:

"There is present, then: (a) Direct evidence of a fall, with direct or circumstantial evidence of its occurrence in course of employment; (b) direct evidence of immediately sequent pain in an area where a 'depression' then or shortly afterward appeared in the body, with circumstantial evidence sufficient to warrant the jury in believing that the 'depression' (or condition signified by it) was produced by impact of Mr. Smith's falling body, and, thus, to find essential connection between the 'fall' and at least a substantial part of developed suffering.

"And if Bright's disease, etc., existed prior to the 'fall' and made substantial contribution to death, those facts would not preclude a holding that death resulted from injury received in the 'fall.' Millers' Ind. Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963 (writ denied); Millers' Ind. Underwriters v. Heller (Tex. Civ. App.) 253 S. W. 853 (writ denied); Tex. Emp. Ins. Ass'n v. Jimenez (Tex. Civ. App.) 267 S. W. 752; Wiemert v. Boston El. R. Co., 216 Mass. 598, 104 N. E. 360; Brightman's Case, 220 Mass. 17, 107 N. E. 527, L. R. A. 1916A, 321; Clover, C. & Co. v. Hughes (1910) A. C. 242, 79 L. J. K. B. N. S. 470, 102 Law T. (N. S.) 340, 26 Times Law Rep. 359, 54 Sol. J. 375, 47 Scot. L. R. 885, 3 B. W. C. C. 275."

In this case the jury found the following facts to have existed:

1. That the defendant in error was injured in the course of his employment about the 2d of May, 1927.

2. That this injury resulted in his total and permanent incapacity.

3. That this injury was the direct cause of the condition of the defendant in error at the time of the trial.

4. That his diseased condition, existing previous to the infliction of his injury, did not directly cause the condition in which the defendant in error was at the time of the trial, nor was the present condition of the defendant in error caused *solely* from his previous-

ly diseased condition. The jury finds the fact to be, which finding is not challenged, that the defendant in error had suffered from the injury in the course of employment, total and permanent disability. The law being that an employee is entitled to compensation for an injury received in the course of employment, notwithstanding the employee may have been afflicted with a disease or diseases which had substantially contributed to his condition, we are unable to find a real conflict between the answer to special issue No. 14 and the answers to the other issues submitted.

We therefore recommend that the judgment of the Court of Civil Appeals and that of the district court be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.